**Donald Kenneth FETTERLY,**
**Petitioner,**

v.

**Dave PASKETT, Warden of the Idaho State Prison; and Jim Jones, Attorney General of the State of Idaho, Respondents.**

**Civ. No. 89–1106.**

United States District Court,
D. Idaho.

Aug. 1, 1990.

---

**968**

Van G. Bishop, Nampa, Idaho and Thomas J. McCabe, Boise, Idaho, for petitioner.

Jim Jones, Atty. Gen., State of Idaho and Lynn E. Thomas, Sol. Gen., Boise, Idaho, for respondents.

## MEMORANDUM DECISION

CALLISTER, Senior District Judge.

The Court has before it petitioner's habeas corpus death penalty action. The Court heard it's second series of oral arguments concerning factual and legal issues on July 10, 1990, has reviewed the entire matter and is prepared to submit its written findings.

The Court has cited the facts of this case in two previous and exhaustive memorandum decisions and will not repeat those recitations here. Instead the Court will simply summarize and give a brief description of the facts before turning to the underlying issues. The petitioner, Donald Fetterly, was sentenced to death for his conviction of first degree murder, burglary and grand theft. In a separate trial petitioner's co-defendant, Karla Windsor, was also found guilty and sentenced to death. On appeal the Idaho Supreme Court affirmed Fetterly's death sentence. 109 Idaho 766, 710 P.2d 1202. Approximately two months later the Idaho Supreme Court reversed the death sentence given to co-defendant Windsor. The Court's primary reason for reversing Windsor's sentence was that she did not commit the actual stabbing. Windsor's case was remanded to the Honorable Edward J. Lodge for resentencing. Judge Lodge truly believed that both Windsor and Fetterly deserved the death penalty, and instead of resentencing Windsor to anything besides death, he disqualified himself. Thereafter, The Honorable Daniel B. Meehl sentenced Windsor to indeterminant life.

During this time Fetterly was seeking post-conviction relief and a reduction of sentence pursuant to Rule 35. This request was premised on the fact that Judge Lodge felt both defendants were equally guilty, and since the Idaho Supreme Court had overturned Windsor's death penalty, Judge Lodge should in turn reduce Fetterly's sentence. Once Judge Lodge disqualified himself from resentencing Windsor, Fetterly moved for his disqualification on the grounds that Judge Lodge could not fairly dispose of petitioner's post-conviction request for a new sentence. Judge Lodge denied Fetterly's motion.

In two earlier memorandum decisions, this Court denied petitioner's request for discovery and addressed three purely legal issues, those being: (1) whether the prejudicial pre-trial publicity deprived Fetterly of a fair trial; (2) whether the time limit for seeking post-conviction relief in a death penalty action was unreasonably restrictive and deprived petitioner of due process and equal protection of the law; and (3) whether Idaho's death sentencing statute was constitutional. In a memorandum decision dated April 10, 1990, the Court denied the petitioner's request for habeas corpus relief based upon the above issues. This final hearing was set up to address the factual issues of the case.

In the briefing the petitioner seeks habeas relief based upon the following four arguments: (1) whether the 42–day time limit for filing post conviction petitions in death penalty cases is unconstitutional; (2) whether the admission of petitioner's confession was improper under the fifth or sixth amendment; (3) whether the admission of only the petitioner's portion of the joint confession violated his due process rights; and (4) whether the petitioner's sentence is unconstitutionally disproportionate to the sentence given to co-defendant Windsor. At oral argument, petitioner's counsel also interjected the following issues: (1)

whether petitioner was unconstitutionally deprived of his right to be sentenced by a jury under the Idaho Constitution; and (2) whether the Idaho Supreme Court's definition of aggravating circumstance "heinous, atrocious, and cruel" is unconstitutionally vague. Petitioner's counsel also brought up two issues which he recently filed in his amended petition for post-conviction relief in the District Court of the Third Judicial District of the State of Idaho, in and for Canyon County, those being: (1) whether petitioner must be re-sentenced in accordance with *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), *cert. denied,* — U.S. ——, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989); and (2) whether petitioner's rights under the confrontation clause of the United States Constitution were violated when he and his attorney were not present during the trial and sentencing of co-defendant Windsor. Finally, petitioner has renewed his request to stay the federal habeas corpus matter pending an outcome by the state court on the recently filed amended petition for post-conviction relief. The Court will address each of these issues.

The first issue involves a constitutionality question of Idaho Code § 19–2719. Petitioner maintains that the restrictive time limit denies him due process, access to the courts, equal protection of the law, and effective assistance of counsel. In support of his argument, petitioner cites as examples the holdings in two Idaho death penalty cases, *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), *cert. denied,* — U.S. ——, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); and *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), *cert. denied,* — U.S. ——, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). In *Charboneau*, the court stated that a life sentence is the presumed sentence for first degree murder and that the trial court must weigh all mitigating circumstances collectively against each aggravating circumstance separately. *Charboneau*, 116 Idaho at 153, 774 P.2d at 323; *see Fain,*

116 Idaho at 100, 774 P.2d at 270. Petitioner avers that because of the 42–day time limit on post-conviction petitions in death penalty cases, that he is deprived of *Charboneau* and *Fain's* impact.[1] This Court disagrees.

First, the issue of the constitutionality of Idaho Code § 19–2719 has already been decided by this Court in the memorandum decision dated April 10, 1990. There, this Court disposed of the issue on two different grounds and will not repeat itself again. *Fetterly v. Paskett*, Civ. 89–1106 (D. Idaho April 10, 1990).

Secondly, and in the alternative, the Court will consider this as a motion for reconsideration. After further review, the Court is of the opinion that petitioner has failed to advise the Court of any legitimate reasons to reverse its earlier decision. In so ruling, the Court incorporates it's reasoning set forth in the memorandum decision dated April 10, 1990 on the issue of the constitutionality of Idaho Code § 19–2719. For these reasons petitioner's request for relief on this ground is denied.

■ The second issue concerns whether or not the admission of petitioner's confession at trial violated his fifth or sixth amendment rights. It is uncontradicted that petitioner and his co-defendant had been arrested on an entirely unrelated charge (credit card fraud) on August 29, 1983. In addition, on that same day petitioner and Windsor were appointed counsel and released on bond. Petitioner is now arguing that once counsel was appointed on the fraud charge that police could not interrogate petitioner without the presence of his appointed counsel. The Court believes that petitioner's claim is without merit for a number of reasons.

Petitioner cites numerous United States Supreme Court cases to support his position. But, the problem with petitioner's arguments is that he is clearly stretching the Supreme Court's rulings. In *Maine v.*

---

**1.** Petitioner relies heavily upon the facts that Fain was sentenced six days before petitioner but petitioner's appeal was determined before Fain's wherein the Idaho Supreme Court set forth how mitigating and aggravating circum-

stances are to be weighed. Furthermore, petitioner claims that the trial judge in his case did not comply with the weighing procedures as set forth in *Charboneau* and *Fain*.

*Moulton,* 474 U.S. 159, 171, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985), the Court stated that once the right to counsel has attached and a defendant has asserted the right, then a state's known circumvention of that right violates the sixth amendment.

In 1988 the Court once again addressed the issue of a valid confession in *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).[2] In *Roberson,* a suspect was arrested for burglary and after being given the Miranda warnings requested a lawyer before answering any questions. Three days later, while the suspect was still in custody, another police officer, unaware of the suspect's request for counsel, questioned the suspect on a different burglary charge whereupon the suspect made incriminating statements. Under these facts the Supreme Court held that the police were prohibited from conducting the second interrogation without first providing counsel. *Id.* at 677, 678, 108 S.Ct. at 2096, 2096. The holding in *Roberson* is not applicable here given the different factual situation—the main distinction being in *Roberson* the suspect was still incarcerated; however, here the petitioner had been released from custody some twelve days earlier. This Court does not read *Roberson* as providing such broad protection. By accepting petitioner's argument this Court would be creating chaos with this area of law. This Court can vision a number of possible problems with the application of such a holding, like how long does the right attach for—two weeks, a month, or even two years? Does the right attach if the suspect is released on the first offense but after that commits a crime in another jurisdiction and is arrested and interrogated there? These are but two of many questions which could have absurd results if this Court were to accept petitioner's argument.

In addition, although the United States Supreme Court did not find it significant in *Roberson* that the second police officer did not know that the suspect had previously requested counsel, given the time sequence here this Court does find knowledge or lack thereof on the part of the police as significant. In petitioner's situation, neither the officer that questioned co-defendant Windsor, nor the officer who took the joint statement, were aware that petitioner had been appointed counsel almost two weeks earlier in a totally unrelated matter. (Tr., Vol. 3 Pre–Trial Motions, pp. 16, 34). The distinction between the facts in *Roberson* and here is that Roberson was still in jail on the earlier charge, whereas here the petitioner had been released for twelve days before being arrested on the unrelated murder charge. For these reasons the petitioner's position is without merit.

■ The Court will also dispose of the above argument on alternative grounds. Earlier in this memorandum decision the Court found that petitioner's prior request for counsel on the fraud charge did not continue over to the time of the murder charge. However, even assuming that it did, the petitioner is still not entitled to relief. In *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), the Court stated:

> Miranda itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, 'the interrogation must cease until an attorney is present.'
>
> . . . .
>
> In concluding that the fruits of the interrogation initiated by the police on January 20 could not be used against Edwards, we do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to counsel. *Had Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.* The Fifth

---

**2.** Petitioner heavily relies upon this United States Supreme Court decision for the argument he is making to this Court.

Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver.... [Emphasis added.]

*Id.* at 485, 486, 101 S.Ct. at 1885, 1885–86. The facts here indicate that the officers did interrogate co-defendant Windsor but did not interrogate petitioner. It was Windsor who requested that petitioner be brought into the room so she could talk to him. After conversing together, it was the two suspects who initiated the conversation with the deputy informing him that they wanted to make a joint voluntary statement. At that point in time the officer read the suspects their Miranda warnings which they clearly waived. Under the circumstances here, the trial court's admission of petitioner's confession was constitutionally valid.[3]

■ Petitioner also argues that the officers violated Idaho Code §§ 19–852 and 19–853, although it appears to the Court that the alleged violation of Idaho Code § 19–853 is the main thrust of petitioner's argument. First, the Court must remind petitioner of the purpose behind a federal habeas corpus petition. The United States Supreme Court has repeatedly held that a federal court can only disturb a state judgment if a prisoner is in custody in violation of the laws, treaties, or Constitution of the United States. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). In other words, a federal court cannot issue a writ on the basis of perceived error of state law. *Id.* at 41, 104 S.Ct. at 874.

■ Although a violation of state law is no ground for habeas relief, the Court will comment on petitioner's argument that Idaho Code § 19–853 was not complied with. That section provides in part that police officers: "[U]pon commencement of detention ... shall clearly inform him [suspect] of his right to counsel and of the right of a

needy person to be represented by an attorney at public expense...." It is the opinion of this Court that the legislature did not intend for the officers to comply with this section the "split second" a suspect is arrested but that "on commencement" means within a reasonable time after detention. In petitioner's case he and his co-defendant were pulled over and first detained around 2:00 p.m. The petitioner was searched, handcuffed, and then transported directly back to jail. At about 2:30 p.m. Deputy Hensen spoke with co-defendant Windsor. The conversation lasted approximately five minutes (Tr. Vol. 3 Pre–Trial Motions, pp. 13, 15). Thereafter, at approximately 2:55 p.m. the suspects were advised of their Miranda rights. (Tr. Vol. 3 Pre–Trial Motions, p. 31, 32). Given this fact scenario, it is the opinion of this Court that the short interval of time between petitioner's detention and the reading of his Miranda rights was reasonable and in full compliance with Idaho Code § 19–853. For all of the above reasons, petitioner's rights under the fifth and sixth amendments were not violated when the trial judge admitted petitioner's confession into evidence.

■ The third issue pertains to whether or not the admission of only the petitioner's portion of the joint confession violated his due process rights on the grounds that it misled the jury. More specifically the petitioner has phrased this issue in the following terms:

THE DEFENDANT IS DEPRIVED OF DUE PROCESS OF LAW WHEN A JOINT STATEMENT IS RULED ADMISSIBLE AND THEN HE MUST CHOOSE BETWEEN HIS RIGHT TO HAVE THE ENTIRETY OF ANY STATEMENT ADMITTED INTO EVIDENCE AND HIS RIGHT TO CONFRONT WITNESSES AGAINST HIM AND THUS HAVE A STATEMENT OF A CO–ACCUSED HELD INADMISSIBLE.

(Petitioner's Supplemental Brief, filed June 7, 1990, at p. 28).

---

3. Due to the Court's disposition of this issue it need not rule on whether or not *Butler v.*

*McKellar,* —— U.S. ——, 110 S.Ct. 1941, 109 L.Ed.2d 304 (1990) is applicable.

During the joint statement of petitioner and co-defendant Windsor, both contributed their version of what transpired. Prior to trial, petitioner attempted to have the entire confession suppressed; however, the trial court denied the motion. Then petitioner's counsel informed the court that he believed his client would be prejudiced by introducing into evidence the statements made by co-defendant Windsor during the joint statement. (Tr. Vol. 3, Pre–Trial Motions, p. 64). The trial court agreed and ordered that the transcript of the confession be edited so as to erase any answers or statements made by co-defendant Windsor.

Petitioner now maintains that the edited confession misled the jury and was prejudicial. In support of this argument he cites various cases where the courts have held that when a confession is introduced, the defendant has a right to require that the entire statement be given to the jury. *State v. Stallworth,* 19 Wash.App. 728, 577 P.2d 617 (Wash.Ct.App.1978).[4] The Court agrees with this rule of law, but finds that it is not applicable to petitioner's situation. It is uncontradicted that petitioner's confession was read in its entirety to the jury. In order to support his argument here, petitioner avers that the statements of co-defendant Windsor "were also the words of the Defendant because they were part of the one joint confession which was taken by the officers." (Petitioner's Supplemental Brief, filed June 7, 1990, at p. 31.) The Court perceives three major problems with this argument. First, petitioner fails to cite the Court to *any* precedence in *any* jurisdiction which has adopted his position. Second, a natural extension of this argument would mean that *all* joint confessions should be suppressed. Third, there is precedence against petitioner's position. In *State v. McMillan,* 65 N.J.Super. 478, 168 A.2d 81 (N.J.Super.Ct.App.Div., 1961), the court upheld the trial court's finding that a confession was properly admitted into evidence, even though there was edit-

ing, since the items deleted were not prejudicial to the defendant. *Id.* 168 A.2d at 83; *see Hager v. State,* 665 P.2d 319 (Okla. Crim.App., 1983); *Hansbrough v. State,* 228 Ind. 688, 94 N.E.2d 534 (Ind.1950), *cert. denied,* 340 U.S. 944, 71 S.Ct. 502, 95 L.Ed. 681 (1951). The *McMillan* court stated:

> Defense counsel would have been lax in the discharge of his assignment had he not requested that the paragraph be deleted before the statement was admitted into evidence and given to the jury. We have here a situation where it is now sought to predicate plain error, not under circumstances where defense counsel failed to object, but upon his action in attempting to prevent prejudice to his client. It seems too obvious for argument that defendant was not prejudiced by the admission of the statement without the offending language, but was, in fact, saved from any prejudice by the so-called alteration.

*Id.* 168 A.2d at 83. The facts in *McMillan* are surprisingly similar to the ones here. Petitioner filed the motion to suppress the entire joint confession, which was denied. Petitioner then asked the judge to delete all other portions of the confession not given by him. The trial court agreed and deleted all of the co-defendant's statements. In fact, at trial, the following testimony took place during the direct testimony of Deputy Appleton:

Q (Mr. Harris) At the time you conducted this interview, there was three persons present?

A Yes, sir.

Q Would you again identify for the record those three individuals?

A Donald Fetterly, Karla Windsor, and myself.

Q Exhibit Number Two that you have in front of you at this time, does that contain a transcription of the entire interview made at that time?

A No, it does not.

4. Petitioner cites the Court to other cases with similar holdings. The Court has reviewed those cases but will not address each one separately as it finds *Stallworth* to sufficiently state the general holding in the remaining cases. Thus the Court's analysis concerning *Stallworth* also pertains to the other cases.

Q   Exhibit Number Two that you have in front of you at the present time, contains what portion of that interview?

A   That portion of the questions I directed to Donald Fetterly and his answers.

MR. HARRIS: At this time I would offer it, Your Honor.

MR. BISHOP: No Objection.

(Tr. Vol. I, pp. 244, 245).

The petitioner has failed to demonstrate to this Court any prejudice caused him due to the editing of the confession. After reviewing the joint confession in its entirety and then comparing that with the portion read to the jury at petitioner's trial, this Court is convinced that no prejudice came to petitioner.[5]

█   The fourth issue is whether or not petitioner's sentence is unconstitutionally disproportionate given his co-defendant's final sentence of indeterminate life.

Generally, the United States Constitution does not require the federal courts to establish proportionality review of a state sentence. *Pulley v. Harris*, 465 U.S. 37, 45, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984).[6]   In Idaho, the sentencing system provides enough safeguards to protect against arbitrariness so that a comparative proportionality review is not constitutionally required.   Many of the safeguards in *Pulley*, which the Supreme Court found sufficient so as not to require proportionality review of a state sentence, are also provided in Idaho's death sentencing procedures.   Under both systems, if a person is convicted of first degree murder a life sentence is given unless special circumstances are present.   In addition, aggravating circumstances must be found to exist beyond a reasonable doubt.   The aggravating and mitigating circumstances must be weighed, the judge must make specific findings, and there is automatic review by the state supreme court.

In order to get around the holding in *Pulley*, the petitioner argues *Pulley* does not apply because Idaho already requires such a proportionality review which was not complied with in this case.   Petitioner's argument fails for a number of reasons.   First, the holding in *Pulley* is applicable here.   Second, even assuming the state did not hold a proportionality review, such would constitute a violation of state law and not a basis for relief in a federal habeas corpus petition.   *Pulley*, 465 U.S. at 41, 104 S.Ct. at 874.   Third, the State of Idaho has complied with Idaho law and conducted the proportionality review which is addressed in detail below.

On direct appeal the Idaho Supreme Court, as required by Idaho Code § 19–2827, compared petitioner's sentence to other Idaho cases and found, "that the sentence imposed in this case is not disproportionate to other cases in which the imposition of the death penalty has been approved."   *State v. Fetterly*, 109 Idaho 766, 773, 710 P.2d 1202, 1209 (1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).   Two months after upholding petitioner's death sentence, the Idaho Supreme Court overturned the death sentence give to petitioner's co-defendant Windsor.   Petitioner now relies primarily upon two factors in support of his theory that his sentence is disproportionate: (1) He should have received a second hearing to compare the proportionality of his sentence to that of his co-defendant; and (2) He should have received the same sentence as his co-defendant Windsor.

Once again petitioner is asking this Court to stretch the current status of the law to afford him relief.   It is true that Idaho Code § 19–2827 requires the Idaho Supreme Court to automatically review a sentence of death to determine whether such a sentence is "excessive or dispropor-

---

**5.**   Prior to the time that this last series of briefs were submitted, the Court did not possess the joint confession in total.   In order to give petitioner every possible benefit, the Court contacted the Idaho State Attorney General's Office and requested a copy of the entire statement.   That item was later filed, and the Court has thoroughly reviewed such.

**6.**   In *Pulley,* the Supreme Court indicated that there may be some circumstances where a comparative proportionality review is required if the capital sentencing system is so lacking in other checks on arbitrariness.   *Id.* at 51, 104 S.Ct. at 879.

tionate to the penalty imposed in similar cases, considering both the crime and the defendant." Idaho Code § 19–2827(c)(3). However, a clear reading of that statute, and common sense, tells this Court that a death sentence cannot be compared, for proportionality purposes, with *future* cases! Idaho Code § 19–2827. Likewise, a defendant is not entitled to continued reviews after every new death sentence is handed down. Such a procedure would place a permanent *automatic stay* on *all* Idaho death sentences.

Petitioner reminds the Court that the state trial judge believed that both he and his co-defendant Windsor should be sentenced to death, and since the Idaho Supreme Court vacated Windsor's death sentence, that for proportionality purposes his sentence should also be vacated. This novel argument assumes that the Idaho Supreme Court was correct in vacating Windsor's sentence. Looking at this argument another way, if the Idaho Supreme Court committed error when it reversed Windsor's death sentence, then such is only prejudicial to the people of Idaho, and not petitioner. Assuming that the Idaho Supreme Court did err in vacating Windsor's sentence, proportionality does not require this, or any other, Court to commit a second error by vacating petitioner's sentence. This is neatly summed up with the old and very well used saying that "two wrongs don't make a right."

■ The next argument of petitioner is that the Idaho State Constitution requires that a jury make a determination of whether or not the death penalty should be imposed. It is now clear that the United States Constitution does not require such a finding. *Walton v. Arizona*, — U.S. —, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) *affirming* 159 Ariz. 571, 769 P.2d 1017 (1989). Petitioner's counsel recognizes the authority of *Walton*, but still maintains that the Idaho sentencing procedures violate the Idaho Constitution. As indicated earlier, a federal court can only disturb a state judgment if a prisoner is in custody in violation of the laws, treaties, or Constitution of the United States, not the individual

states. *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874. The Court must remind petitioner that the Idaho Constitution may afford more protection than the United States Constitution, but cannot afford less. Thus, that determination is made by the state's highest court. With this in mind, in prior cases the Idaho Supreme Court has held that the Idaho Constitution, article 1, section 7, does not mandate that a jury impose the death sentence. *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *see State v. Sivak*, 105 Idaho 900, 674 P.2d 396 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984). In sum, petitioner's argument is without merit.

■ Once again, the petitioner maintains that the aggravating circumstances delineated in Idaho Code § 19–2515 are unconstitutionally vague. In support of this, petitioner relies upon the different definitions of "aggravating circumstances" as stated by the Idaho Supreme Court in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 267, 107 L.Ed.2d 267 (1989), and *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989). In a recent decision, the Idaho Supreme Court recognized that different definitions had been given and found:

To the extent that any of the definitions of Idaho Code § 19–2515(g) analyzed and adopted in *State v. Charboneau*, are inconsistent with those in *State v. Fain*, this Court does hereby reaffirm the definitions contained in *State v. Charboneau* and holds that I.C. § 19–2515(g) thus defined passes this constitutional challenge.

*State v. Paz*, — Idaho —, 795 P.2d 18 (1990).

In support of his unconstitutionally vague theory, the petitioner relies upon *Maynard v. Cartwright*, 486 U.S. 356 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and

*Adamson v. Ricketts,* 865 F.2d 1011 (9th Cir.1988), *cert. denied, Lewis v. Adamson,* — U.S. ——, 110 S.Ct. 3287, 111 L.Ed.2d 795 (1990). This Court distinguished *Adamson* in its prior memorandum decision and order filed April 10, 1990. After that time the United States Supreme Court issued its ruling in *Walton v. Arizona,* which effectively abrogated the *Adamson* decision.[7] Additionally, in *Walton,* the Court effectively distinguished petitioner's reliance upon *Maynard v. Cartwright.* At length the Court found:

> Walton's final contention is that the especially heinous, cruel or depraved aggravating circumstances as interpreted by the Arizona courts fails to channel the sentencer's discretion as required by the Eighth and Fourteenth Amendments. Walton contends that the Arizona factor fails to pass constitutional muster for the same reasons this Court found Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance to be invalid in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and Georgia's "outrageously or wantonly vile, horrible or inhuman" circumstance to be invalid in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
>
> *Maynard v. Cartwright* and *Godfrey v. Georgia,* however, are distinguishable in two constitutionally significant respects. First, in both *Maynard* and *Godfrey* the defendant was sentenced by a jury and the jury either was instructed only in the bare terms of the relevant statute or in terms nearly as vague. See 486 U.S., at 358–359, 363–364, 108 S.Ct. at 1856, 1858–59; 446 U.S., at 426, 100 S.Ct. at 1763. Neither jury was given a constitutional limiting definition of the challenged aggravating factor. Second, in neither case did the State appellate court, in reviewing the propriety of the death sentence, purport to affirm the death sentence by applying a limiting definition of the aggravating circum-

stance to the facts presented. 486 U.S., at 364, 108 S.Ct. at 1859; 446 U.S., at 429, 100 S.Ct. at 1765. These points were crucial to the conclusion we reached in *Maynard.* See 486 U.S., at 363–364, 108 S.Ct. at 1856. They are equally crucial to our decision in this case.

> When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face. That is the import of our holdings in *Maynard* and *Godfrey. But the logic of those cases has no place in the context of sentencing by a trial judge. Trial judges are presumed to know the law and to apply it in making their decisions.*

*Walton,* 110 S.Ct. at 3056–57 (emphasis added).

The position of the United States Supreme Court is directly on point. Since petitioner's death sentence was imposed by a judge as well as the fact that the Idaho Supreme Court has effectively narrowed the definition of aggravating circumstances, this Court finds that petitioner is not entitled to relief on this issue.

■ Petitioner has requested that this Court stay its proceeding until the state court has ruled upon the amended petition for post-conviction relief. In determining whether or not a stay would be beneficial, the Court feels compelled to look to the specific issues and merits included in the amended petition for post-conviction relief. Obviously, if the Court finds that those issues have merit, it would be the best course to stay its proceedings to allow the state court to address the issues. However, even assuming the issues do have merit, if the petitioner is not entitled to federal habeas corpus relief on those issues, there is no reason for this Court to stay its proceedings. Therefore, the Court

---

7. It is interesting to note that the very next day that *Walton* was ruled on, the Supreme Court denied certiorari in *Lewis v. Adamson.* At that time only seven Justices sat as Justice Kennedy and Justice O'Connor recused themselves. It is also interesting that Justice O'Connor and Justice Kennedy were in the majority of the *Walton* decision.

976

will *sua sponte* determine whether or not petitioner would be entitled to relief under the two issues submitted to the state court. The first issue is whether or not petitioner must be re-sentenced so as to comply with the standards set forth in *State v. Charboneau,* requiring that all the mitigating circumstances be weighed against each of the aggravating circumstances separately. The record reflects that the Idaho Supreme Court's ruling in *State v. Charboneau* was based upon the Court's interpretation of Idaho Code § 19–2515(c) as well as Idaho law. Therefore, this issue would not be grounds for federal habeas corpus relief under the authority of *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

■■■ The second issue included in petitioner's post-conviction relief petition pertains to his confrontation rights. Specifically, petitioner has set forth the novel argument that his rights under the confrontation clause of the United States Constitution were violated when he and his attorney were not present during the trial and sentencing of co-defendant Windsor. The Court has very skeptically looked at this argument but has found no precedence so holding. It is the opinion of this Court that no precedence was found as none exists. Therefore, this argument is completely without merit, and even if it was properly before this Court, it would be summarily dismissed.

■■■ Counsel has also indicated the possibility of an ineffective assistance of counsel issue since trial counsel failed to raise the confrontation clause issue. All ineffective assistance of counsel allegations are reviewed under the auspices of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Court stated that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2063. Since the Court finds the confrontation clause issue to be frivolous, it in no way can find coun-

sel ineffective for failing to raise this issue at the state level.

For all of the above reasons the petitioner's petition for writ of habeas corpus is denied. The Court will also, as of August 20, 1990, lift the order for stay of execution of death sentence issued on April 13, 1989, and will allow the state to go ahead with its procedures in issuing another death warrant.