**Donald Kenneth FETTERLY, Petitioner/Appellant,**

v.

**David PASKETT, Warden, Idaho State Prisons; and Jim Jones, Attorney General of the State of Idaho, Respondents/Appellees.**

No. 90–35627.

United States Court of Appeals, Ninth Circuit.

Argued April 10, 1991.

Submission deferred April 25, 1991.

Reargued and Submitted March 31, 1993.

Decided July 9, 1993.

Thomas J. McCabe, Westberg, McCabe & Collins, Boise, ID, David J. Burman, Nicholas P. Gellert, Perkins Coie, Spencer C. McIntyre, Ragen & Cromwell, Seattle WA, for petitioner/appellant.

Lynn E. Thomas, Sol. Gen., Office of Atty. Gen. of State of Idaho, Boise, ID, for respondents/appellees.

Before: SCHROEDER, LEAVY, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Donald Fetterly comes to us sentenced to death by the State of Idaho. Among his claims on appeal from a denial by the district court of his petition for a writ of habeas corpus is a claim that he should have been granted a stay to exhaust in state court newly identified Constitutional claims. Fetterly's newly appointed counsel had discovered these claims and wanted to include them in Fetterly's petition. Counsel's request for a stay was denied, and Fetterly's petition was not amended. These new claims relate to admitted irregularities in the manner in which the sentencing court determined Fetterly must die for the murder of Sterling Grammer.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253 (1988), and we order a limited remand to the district

court with instructions to permit Fetterly to amend his petition so he may litigate his newly exhausted claims.

## I

On December 15, 1983, Donald Fetterly was convicted by a jury in Idaho of the premeditated murder of Sterling Grammer. In a subsequent sentencing hearing, the trial court sitting without a jury found as statutorily aggravating circumstances that (1) the murder was especially heinous, atrocious or cruel, manifesting exceptional depravity; (2) the defendant exhibited utter disregard for human life; and (3) the murder was committed during the commission of a felony, i.e., burglary, and was accompanied by the specific intent to cause the death of a human being. *See* Idaho Code § 19–2515(g)(1)–(10). The trial court sentenced Fetterly pursuant to Idaho Code § 19–2515. Section 19–2515(c) provides:

> Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.

Because the trial court determined that the "mitigating circumstances [found in Fetterly's favor] do not outweigh the gravity of the aggravating circumstances," it sentenced Fetterly to death. Fetterly's conviction and his death sentence were affirmed by the Supreme Court of Idaho, *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), and his first attempt to secure post-conviction relief was unsuccessful. *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989).

## II

On April 10, 1989, Fetterly filed a petition for a writ of habeas corpus in the District Court for the District of Idaho that is the subject of this appeal. The lawyer who filed the petition was the same lawyer who had represented Fetterly at every stage of the case in state court.

On October 17, 1989, a second lawyer entered this case on behalf of Mr. Fetterly, Mr. Thomas J. McCabe. He was appointed pursuant to 21 U.S.C. § 848(q)(4)(B), and (5), (6), (7). As Mr. McCabe stated during oral argument, he was new to the case, and thus, gave it "a fresh look." As he did, he concluded that the trial court erred with respect to the manner in which it weighed the mitigating circumstances against the aggravating ones. Instead of weighing the mitigating circumstances collectively against *each* of the aggravating circumstances separately, as required by Idaho Code § 19–2515(c), the sentencing judge had weighed all the mitigating circumstances against all the aggravating circumstances together as a group.

Mr. McCabe's recognition of this error was aided no doubt by the decision of the Supreme Court of Idaho in *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299, *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989). *Charboneau* was decided on April 4, 1989, just 6 days before Fetterly's first attorney filed Fetterly's petition for a writ of habeas corpus in federal district court, and before Mr. McCabe entered the case. In *Charboneau,* the Supreme Court of Idaho explicitly disapproved of the weighing approach to aggravating and mitigating circumstances taken by the sentencing judge in the instant case. The court said: "If the legislature had intended the mitigating circumstances to be weighed against all the aggravating circumstances found as a group, it would have referred to 'the aggravating circumstances found.' The plain meaning of the statute dictates our conclusion on this issue." 774 P.2d at 323.

When Mr. McCabe discovered the possible presence of "*Charboneau* error," as it is now called in Idaho, he took two steps on behalf of his client. On June 15, 1990, he filed a second state petition for post-conviction relief alleging, *inter alia,* *Charboneau* error and ineffective assistance of counsel; and on June

20, 1990, he requested the federal district court to stay the resolution of his pending petition to allow him to exhaust Fetterly's state remedies on the newly identified issues. Mr. McCabe's goal in requesting a stay was to exhaust all his federal Constitutional claims in state court and then to present them in a single proceeding for review in the federal court. In so doing, he would have avoided any claim by Idaho that any second petition would be defective as "abusive." *See McCleskey v. Zant,* 499 U.S. 467, ———————, 111 S.Ct. 1454, 1465–66, 113 L.Ed.2d 517 (1991). Mr. McCabe also recognized that if he moved to amend his petition in federal court, it would have been subject to dismissal under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) because it contained unexhausted claims.

On June 26, 1990, the district court denied Fetterly's stay pending further argument. On August 1, 1990, the denial of the stay was made final on the ground that, as a matter of law, none of the new issues raised were matters of federal Constitutional dimension and thus were not cognizable under habeas corpus. The district court in a *"sua sponte"* decision stated that the *Charboneau* problem was exclusively a matter of state law. *Fetterly v. Paskett,* 744 F.Supp. 966, 976 (D.Idaho 1990) (citing *Pulley v. Harris,* 465 U.S. 37, 41–42, 104 S.Ct. 871, 874–875, 79 L.Ed.2d 29 (1984)). Fetterly was not given an opportunity directly to brief or to argue this pivotal issue prior to the district court's adverse ruling. Subsequently, the district court denied Fetterly's original petition on the merits, *Fetterly v. Paskett,* 747 F.Supp. 594 (D.Idaho 1990), and Fetterly filed this timely

appeal. One of the issues raised, and the only issue we decide in this opinion, is whether the district court abused its discretion in rejecting Fetterly's motion for a stay pending exhaustion of newly discovered issues.

### III

We heard argument for the first time on April 10, 1991. At that time, Fetterly's second state post-conviction petition for relief, based primarily on *Charboneau* error, coupled with a claim of ineffective assistance of counsel, was pending before the Supreme Court of Idaho. Because a determination of this issue in Fetterly's favor would have mooted this appeal, we deferred submission pending a decision of the Supreme Court of Idaho.

On December 19, 1991, Fetterly lost his appeal. *See Fetterly v. State,* 121 Idaho 417, 825 P.2d 1073 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992). In a divided opinion, the Supreme Court of Idaho determined that its holding in *Charboneau* constituted a "new rule." Citing *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) with respect to the implications of a "new rule" on retroactivity, the Supreme Court of Idaho refused to apply Idaho Code § 19–2515(c) to Fetterly's case because his case was "final prior to the issuance of *Charboneau.*" [1] *Id.* at 1075. The court also concluded that Fetterly's ineffective assistance of counsel claim had been waived. *Id.* Fetterly's subsequent petition to the United States Supreme Court for a writ of certiorari was denied on November

---

1. The "new rule" doctrine on which the Supreme Court of Idaho relied relates to "new *constitutional* rule[s] of criminal procedure." *Teague v. Lane,* 489 U.S. 288, 299, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989) (emphasis added). The holding in *Charboneau* is not connected to any Constitutional commands. In addition, the United States Supreme Court has described a "new rule" as a ground-breaking rule not dictated by precedent. *See Penry v. Lynaugh,* 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989). The Idaho Supreme Court opinion describes Fetterly's claim as one that should have been known immediately after his trial.

It appears that Fetterly did not seek to take advantage of any new rights or opportunities

created by *Charboneau,* but only of an existing right stated in the statute itself. Idaho Code § 19–2515(c). Thus it is difficult for us to understand why the Idaho Supreme Court utilized a retroactivity analysis. There may, however, have existed some other reason to deny Fetterly the benefit of the statute, such as procedural default as outlined by Justice Johnson in his separate opinion concurring in the result based on Idaho Code § 19–2719. *Fetterly,* 121 Idaho 417, 825 P.2d at 1075 (Johnson, J., concurring). We mention our concerns because of the rule that any independent state ground barring federal habeas consideration be both "adequate" and "independent." *Coleman v. Thompson,* —— U.S. ——, ———————, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991).

30, 1992. *Fetterly v. Idaho*, —— U.S. ——, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992).

After the Idaho Supreme Court made its determination on Fetterly's claim of *Charboneau* error, we scheduled oral argument in Boise, Idaho on March 31, 1993. Based on that argument and the record in this case, we have determined as explained below that the appropriate steps at this juncture are: 1) to order a limited remand to the district court to permit Fetterly to amend his petition to add the newly exhausted claims; and, 2) to order the district court to adjudicate those claims and any issues directly related to them. We will hold in abeyance a determination on Fetterly's other claims which we conclude were fully developed in the district court. In so doing, we avoid piecemeal adjudication in the court of appeals.

### IV

■ With respect to matters involving Idaho Code § 19–2515(c) and Fetterly's other newly exhausted claims, the only issue before us is whether the district court committed error in rejecting Fetterly's new counsel's request for a stay so that these new issues could be exhausted as a prelude to filing a unitary amended petition in federal district court. Because of the district court's *sua sponte* ruling, no such amended petition has ever been filed. Thus, we are limited to deciding whether Fetterly presented the district court with claims cognizable under habeas, and whether, under the circumstances of this case, it was an abuse of discretion to deny him the opportunity to exhaust these claims and thereafter amend his petition.

### A.

Comparing the mandate of Idaho Code § 19–2515(c) as confirmed in *Charboneau*, concerning the manner in which an Idaho judge considering the imposition of the death penalty must approach the task of weighing mitigating against aggravating circumstances, with what the sentencing judge did in this case, a strong argument emerges for the proposition that Fetterly's sentence was not determined in accord with the requirements of Idaho law. To quote a dissenting Justice of the Supreme Court of Idaho, "No one disputes that the [state] district court did not engage in the balancing procedure mandated by the legislature in I.C. § 19–2515(c)." *Fetterly v. State*, 121 Idaho 417, 825 P.2d at 1081 (Bistline, J., dissenting on denial of petition for rehearing). Setting aside for a moment the procedural complexities in which this issue is now enveloped, this dissonance with Idaho sentencing law appears to create a federal Constitutional issue cognizable on habeas corpus.

In *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Supreme Court held that states can impose the death penalty for certain crimes without running afoul of our Constitutional prohibition against cruel and unusual punishment, but only if the manner in which the penalty is selected "provide[s] a meaningful basis for *distinguishing* the few cases in which [the penalty] is imposed from the many cases in which it is not." *Id.* at 427, 100 S.Ct. at 1764 (emphasis added) (internal quotations omitted) (alterations in original). As pointed out by Justice Stevens, "this Court's decisions have made clear that States may impose this ultimate sentence *only if they follow procedures* that are designed to assure reliability in sentencing determinations." *Barclay v. Florida*, 463 U.S. 939, 958–59, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring) (emphasis added). Part of the requirement of reliability is " 'that the [aggravating and mitigating] reasons present in one case will reach a similar result to that reached under similar circumstances in another case.' " *Id.* at 954, 103 S.Ct. at 3427 (plurality opinion) (alterations in original) (quoting *Proffitt v. Florida*, 428 U.S. 242, 251, 96 S.Ct. 2960, 2966, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)) (internal quotations omitted).

Because Fetterly may not have been sentenced to death as prescribed by Idaho Code § 19–2515(c), this goal of similar sentences in similar cases may not have been met. If the sentencing judge did not follow Idaho's statutory procedures in Fetterly's case, others similarly sentenced in Idaho have been and will necessarily be treated differently if mitigating circumstances in their respective cases are grouped against each aggravating

circumstance, rather than against the aggravating circumstances as a whole. In fact, after *Charboneau* the Supreme Court of Idaho has reversed several sentences for § 19–2515(c) error and remanded for resentencing. *See, e.g., State v. Fain,* 116 Idaho 82, 774 P.2d 252, *cert. denied,* 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *State v. Leavitt,* 116 Idaho 285, 775 P.2d 599, *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989); *State v. Sivak,* 119 Idaho 320, 806 P.2d 413 (1990); *Stuart v. State,* 118 Idaho 865, 801 P.2d 1216 (1990). Moreover, such an error necessarily made it harder for the mitigating circumstances found in Fetterly's favor to overcome the aggravating circumstances, because the latter were weighed as a group rather than separately as required by the controlling statute. Other persons sentenced to death in Idaho are not required to overcome this higher hurdle.

■ There is, of course, nothing in the Constitution of the United States that requires Idaho's legislature to approach balancing as it has done in Idaho Code § 19–2515(c). However, the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state. Ninth Circuit precedent generally supports this proposition. In *Ballard v. Estelle,* 937 F.2d 453 (9th Cir. 1991), we said, "[Petitioner's] claim that his sentence violated California sentencing laws because a different definition of 'personal use' of a firearm was used than California has adopted in other cases sets forth a cognizable federal habeas corpus claim based on the due process clause of the Fourteenth Amendment." *Id.* at 456. *See also Hernandez v. Ylst,* 930 F.2d 714, 719 (9th Cir.1991) ("[F]ederal courts sitting in habeas can and will review an application of state law for alleged constitutional violations. Federal courts [,however,] are extraordinarily chary of entertaining habeas corpus violations premised upon asserted deviations from state procedural rules." (citations omitted)). To paraphrase *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), where a state has provided a specific method for the determination of whether the death penalty shall be imposed, "it is not correct to say that

the defendant's interest" in having that method adhered to "is merely a matter of state procedural law." *Id.* at 346, 100 S.Ct. at 2229.

■ The very purpose of statutes such as Idaho Code § 19–2515(c) is to comply with the exacting requirements of the Constitution of the United States as articulated by the Supreme Court in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny. Moreover, when we deal with matters involving aggravating and mitigating circumstances, we are at the very core of the Supreme Court's mandate that the death penalty be determined based on the character of the offender as well as the circumstances of the offense. To quote the Court:

> [D]eath is a punishment different from all other sanctions in kind rather than degree. A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.

> This Court has previously recognized that [f]or the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender. Consideration of both the offender and the offense in order to arrive at a just and appropriate sentence has been viewed as a progressive and humanizing development. While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect

for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Woodson v. North Carolina,* 428 U.S. 280, 303–05, 96 S.Ct. 2978, 2990–2992, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (citations omitted). Furthermore, "*Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably *directed* and *limited* so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (emphasis added).

In response to these imperatives, Idaho's legislature has "directed" the manner in which aggravating and mitigating circumstances shall be weighed, and it has "limited" imposition of the death penalty to those specific situations where "the trial court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances found." *Charboneau,* 116 Idaho 129, 774 P.2d at 323 (Bistline, J., dissenting). For whatever reason, Idaho has chosen to prohibit the grouping of aggravating circumstances in connection with their weighing against whatever elements of mitigation that appear in a given case; and "[w]hen the weighing process itself has been skewed, only constitutional harmless error analysis or reweighing at the trial or appel-

late level suffices to guarantee that the defendant received an individualized sentence." *Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992). Thus, we conclude that Fetterly's motion for a stay was predicated on a cognizable claim that in enacting and enforcing § 19–2515(c), Idaho has created a liberty interest protected under the Due Process Clause of the Fourteenth Amendment.

**B.**

■ In the light of the foregoing, we respectfully conclude that for two reasons it was an abuse of discretion for the district court to deny Fetterly's request for a stay. First, contrary to the district court's view that the sentencing court's failure to follow Idaho Code § 19–2515(c) does not raise an issue cognizable under habeas, we conclude it does. Our conclusion in this respect rejects the district court's legal reason for its denial. A decision based on a misapprehension of the law may constitute an abuse of discretion. *Northern Alaska Envtl. Ctr. v. Lujan,* 961 F.2d 886, 889 (9th Cir.1992). Second, Fetterly was represented through the filing of his petition in federal district court by the same attorney who represented him when the *Charboneau* error may have been committed. As Fetterly now states, this raises the specter of ineffective assistance of counsel. If Fetterly has lost the benefit of Idaho Code § 19–2515(c), it may be because of an omission by his original attorney to spot the error of the sentencing judge. Under the circumstances, we believe the only appropriate course for the district court was to allow Fetterly's new attorney to advance claims missed by the attorney who overlooked them. We note that Fetterly's original attorney bowed out of the case after Mr. McCabe's discoveries. In this respect, we follow the text of the federal habeas statute which enjoins us to "dispose of the matter as law *and justice* require." 28 U.S.C. § 2243 (emphasis added). *See Withrow v. Williams,* —— U.S. ——, ——, 113 S.Ct. 1745, 1766, 123 L.Ed.2d 407 (1993) (Scalia, J., concurring in part and dissenting in part).

Given the growing tendency of the Supreme Court to shut the door on second petitions even when issues were defaulted due to errors by counsel, *see Keeney v. Ta-*

*mayo–Reyes,* —— U.S. ——, —— n. 5, 112 S.Ct. 1715, 1720 n. 5, 118 L.Ed.2d 318 (1992), it is understandable that Mr. McCabe wished to bring all his claims in one pending proceeding rather than move to dismiss and start again when he had fully exhausted his new issues. There is nothing at all in this record to suggest that the motion for a stay was brought to delay, to vex, or to harass, or that the request was an abuse of the writ. *See Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay."). Moreover, were we to close the door on Fetterly at this juncture, he would no doubt file a second petition in the district court based on these same claims. If so, we would see the same claims again, but they would be encumbered with all the new issues that come with subsequent petitions.

### C.

Under the circumstances, the appropriate remedy at this juncture is to issue a limited remand to the district court with orders to permit Fetterly to amend his petition to add newly exhausted claims and to proceed accordingly. Because there is no petition before us in which his claims of § 19–2515(c) error and related ineffective counsel are spelled out, we reiterate that we are in no position to render an informed opinion on the merits of these subjects. All we are competent to adjudicate is whether it was error to deny Fetterly's motion for a stay. Moreover, the *Charboneau* issue is shrouded by other legal issues that are best litigated in district court. Is Fetterly precluded from raising his Idaho Code § 19–2515(c) issue by virtue of Idaho Code § 19–2719, which requires that all challenges to a conviction and sentence be raised in a timely petition for post-conviction relief under penalty of forfeiture of those claims? Was Fetterly defaulted by the Supreme Court of Idaho on procedural grounds? If so, can he demonstrate "cause" and "actual prejudice" or a "fundamental miscarriage of justice" that would relieve him of this procedural default? *Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). Does *Charboneau*

represent a "new rule" of constitutional interpretation as claimed by the Supreme Court of Idaho, or does this label misunderstand the "new rule" doctrine? Does *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) stand in Fetterly's way as claimed by Idaho's Attorney General? Did the Supreme Court of Idaho misapprehend federal law in connection with retroactivity? Was Idaho compelled by the Constitution of the United States to apply the plain meaning of Idaho Code § 19–2515(c) to Fetterly notwithstanding the finality of his case? Were any errors committed by the sentencing court adequately remedied by the opinion of the Supreme Court of Idaho? *See Barclay v. Florida,* 463 U.S. at 956–58, 103 S.Ct. at 3428–3429. These and any other issues raised by Fetterly's amended petition if germane shall be litigated in the trial court.

**REMANDED** for further proceedings in accord with this opinion. When such proceedings have been concluded, the parties shall promptly so notify this court by filing with the Clerk of this court a copy of the district court's final decision. This filing shall be accompanied by a copy of any notice of appeal from that decision filed with the Clerk of the district court pursuant to Fed. R.App.P. 3 and 4. Fetterly's remaining issues remain with this court, but submission of them for decision is hereby ordered deferred.