**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jacinto GARCIA–OROZCO,
Defendant–Appellant.**

No. 92–50613.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1993.

Decided July 12, 1993.

TANG, Circuit Judge:

Jacinto Garcia–Orozco was convicted of importation of marijuana and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a) and 952, after Customs agents on December 31, 1991, discovered 120 pounds of marijuana in the vehicle Garcia–Orozco was driving across the Mexican border. Because Garcia–Orozco was prejudiced by the erroneous admission of his prior arrest for possession with intent to distribute heroin and his conviction for misdemeanor unlawfully resisting arrest, we reverse and remand.

## DISCUSSION

In August, 1988, Garcia–Orozco was a passenger in a car pulled over by the California Highway Patrol. When the Officer found heroin in the door panel of the car, the driver and Garcia–Orozco ran. Although Garcia–Orozco was arrested for possession with intent to distribute heroin, he was only convicted of misdemeanor unlawfully resisting arrest.

In the present case, Garcia–Orozco filed a motion in limine to preclude evidence of this prior arrest and conviction. The trial court ruled that it was not admissible as part of the government's case-in-chief, and reserved ruling on its use in the government's rebuttal case. After Garcia–Orozco's testimony, the court ruled that Garcia–Orozco had opened the door to the prior arrest evidence by testifying that he did not know that marijuana was in the Suburban. The court ruled that the prior arrest was relevant because the finding of contraband in the first car put Garcia–Orozco on "notice" that the Suburban may have had contraband secreted within it, and the prior arrest thus went to Garcia–Orozco's knowledge. The government called as a witness the California Highway Patrol Officer who had arrested Garcia–Orozco in 1988, who testified extensively about that incident and finding the heroin.

Robert L. Swain, San Diego, CA, for defendant-appellant.

Joyce Fitzpatrick, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: BROWNING, BRIGHT * and TANG, Circuit Judges.

Rule 404(b), Fed.R.Evid., prohibits evidence of prior crimes or bad acts merely to

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

prove bad character, but does allow it to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case." *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985) (quotation omitted).

■ Evidence of prior criminal conduct may be admitted to prove knowledge under Rule 404(b) if (1) the other act evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in some cases, the other act is similar to the offense charged. *United States v. Bibo-Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.), *cert. denied,* ––– U.S. –––, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). The district court's admission of the evidence is reviewed for an abuse of discretion. *Id.* at 1401.

The primary dispute here is whether the evidence of the prior arrest and conviction in 1988 proved any material issue in this case; i.e. whether it was relevant to Garcia-Orozco's knowledge on December 31, 1991, that the Suburban contained marijuana. In order to establish relevance, the government is required to establish a "logical basis from which to infer knowledge of the presence of [contraband] in the vehicle" from the prior act. *United States v. Hernandez-Miranda,* 601 F.2d 1104, 1108 (9th Cir.1979).

In *Hernandez-Miranda,* where a defendant charged with heroin importation claimed he had no knowledge of the heroin in the car he was driving, we held that it was error to admit evidence that the defendant had previously been convicted for smuggling marijuana, because the only similarity was that the defendant was again on trial for

smuggling drugs across the border. *Id.* at 1108–09.[1]

In *Bibo-Rodriguez,* 922 F.2d at 1401–02, on the other hand, we upheld the introduction of evidence that the defendant, who was charged with importing cocaine in the roof panel of a car, had also transported marijuana across the border in the door panel of a car, to prove the defendant's knowledge of the presence of contraband. The court noted that similarity "is necessary to indicate knowledge and intent," and that the marijuana importation was "relevant to show that the defendant could not have been duped ... because he repeated a similar, although not identical, action on a subsequent occasion." *Id.* at 1402.

■ In this case, there is no logical basis from which to infer that Garcia-Orozco knew that the Suburban contained drugs because drugs were found in a car in which he was previously a passenger. Significantly, unlike in *Bibo-Rodriguez,* Garcia-Orozco was not convicted of importation or possession of drugs in the previous incident. Garcia-Orozco had no demonstrated connection to the drugs in the 1988 incident, and had not claimed that he was "duped" into transporting drugs. It is unreasonable to expect that the 1988 incident would have put Garcia-Orozco on "notice" that every car in which he rode thereafter could contain drugs. Whether Garcia-Orozco should have been suspicious of the request to drive the vehicle across the border is a separate issue and not logically related to the 1988 incident. Because the prior arrest and conviction did not "tend to prove a material point," *Bibo-Rodriguez,* 922 F.2d at 1400, the district court abused its discretion by admitting the evidence.[2]

Further, the error was not harmless. *See United States v. Emmert,* 829 F.2d 805, 808 (9th Cir.1987) (reversal required only if the court's evidentiary ruling more likely than

1. We upheld that conviction because the admission of the evidence was not prejudicial. *Id.,* at 1109.

2. Although the government also argues that the evidence was admissible to impeach Garcia-Orozco's testimony that he was nervous at the secondary inspection site because it was the first time he was "in inspection," the district court rejected the defendant's request for a jury instruction that this rebuttal evidence be limited to impeaching this testimony, and instructed the jury that the evidence of the prior conviction was relevant *only* to Garcia-Orozco's knowledge.

not affected the verdict). In the instant case, the government introduced evidence that Garcia–Orozco crossed the border from Mexico at the Otay Mesa Port of Entry on December 31, 1991. Garcia–Orozco was driving the Suburban, with four children under the age of thirteen as passengers. He told Customs Inspector Pennington that he was not the registered owner of the vehicle, but was able to produce the registration. Garcia–Orozco often looked to an older girl in the front seat, which raised Pennington's suspicions.[3] The vehicle was referred to secondary inspection.

At the secondary inspection site, Senior Inspector Rising asked Garcia–Orozco to open the back tailgate; Garcia–Orozco said that the tailgate door would not open, and was unable to do so. Garcia–Orozco testified that he knew the tailgate door would not open because another inspector had asked him to open it when he first drove into secondary inspection, but the agents testified that Rising was the only agent to ask him to open the tailgate.

Rising noticed shiny screws in the rear area of the vehicle, which he thought might indicate recent modifications. Rising then summoned a narcotics detection dog, at which point Garcia–Orozco appeared very nervous. The dog alerted at the gas tank area, and Canine Enforcement Officer Tapley then opened the tailgate. Approximately 118 pounds of marijuana were found hidden next to an adapted gas tank (which held only 7–8 gallons). The retail value of the marijuana was approximately $240,000.[4]

Garcia–Orozco testified that he had gone to Mexico that morning at the request of Rigoberto Zamora, an acquaintance who he met in a bar seven months earlier. Zamora told Garcia–Orozco that he would be travelling in Mexico and did not want to leave his car there, but Zamora did not tell Garcia–Orozco when he would pick up the Suburban. Garcia–Orozco, a Mariachi musician out of work, said he agreed to pick up Zamora's Suburban because he felt Zamora might be able to obtain work for him.

Garcia–Orozco's cousin drove the children and Garcia–Orozco to the San Ysidro border crossing that morning, where they took a cab to a shopping center in Otay Mesa. Garcia–Orozco testified that Zamora left the Suburban in a mall parking lot, unlocked, and left the key under the mat. Garcia–Orozco's nephew testified that Garcia–Orozco opened the door with a key. This testimony may not be inconsistent: Garcia–Orozco could have retrieved the key from the unlocked driver's side, and then unlocked the passenger's side. Garcia–Orozco testified that he had no knowledge that there was marijuana in the vehicle.

While the government's evidence may have been sufficient to support Garcia–Orozco's conviction when viewed in the light most favorable to the prosecution, see *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the introduction of Garcia–Orozco's prior arrest and conviction more likely than not affected the verdict, *Emmert*, 829 F.2d at 808. Garcia–Orozco's defense rested largely on his own testimony, and the government's extensive use of the prior arrest and conviction more than likely affected the jury's measure of Garcia–Orozco's credibility.

**REVERSED AND REMANDED FOR NEW TRIAL.**

---

**3.** Garcia–Orozco and his nephew both testified that Garcia–Orozco was actually looking to his nephew in the back seat because Garcia–Orozco did not understand some of the agent's questions or directions in English.

**4.** The government also argues that Garcia–Orozco's familiarity with the location of the registration in the vehicle, his continual glancing at the girl in the front seat, his return from Mexico without alcohol or cigarettes on New Year's Eve, and his nervousness in secondary inspection also support an inference of his knowledge. However, there are equally plausible explanations for these factors which do not lead to an inference of Garcia–Orozco's knowledge of marijuana in the vehicle.