Donald Kenneth FETTERLY,
Petitioner–Appellant,

v.

David PASKETT, Warden, Idaho State
Prisons; and Jim Jones, Attorney General of the State of Idaho, Respondents–Appellees.

No. 90–35627.

United States Court of Appeals,
Ninth Circuit.

Jan. 24, 1994.

Amended March 8, 1994.

Before: SCHROEDER, LEAVY, and
TROTT, Circuit Judges.

The panel has voted to deny appellees' petition for rehearing and to reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35. Judges Kozinski, Hall, and Wiggins would grant the suggestion for rehearing en banc.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

KOZINSKI, Circuit Judge, with whom Circuit Judges HALL and WIGGINS join, dissenting from the order rejecting the suggestion for rehearing en banc:

The Supreme Court has told us in no uncertain terms that we may not delay federal habeas proceedings so the petitioner can litigate unrelated claims in state court. *In re Blodgett,* —— U.S. ——, ——, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992). Rather, our duty is "to take all steps necessary to ensure a prompt resolution of the matter...." *Id.*

The district judge here followed this prescription to the letter: He adjudicated expeditiously the claims Fetterly raised in his federal habeas petition and refused to stay proceedings to let Fetterly exhaust an unrelated claim in state court. On appeal, a panel of our court reverses. Without even a nod to *Blodgett,* the panel holds that the district judge abused his discretion by doing what the Supreme Court said he must do. Refusing to look at the claims actually decided by the district court, the panel holds the appeal in limbo so Fetterly can litigate a claim he did not raise *and could not have raised* in his habeas petition. As Yogi Berra is said to have said, it's deja vu all over again.

The panel's cold shoulder to *Blodgett* is but the first of many errors. The opinion also manages to ignore or misapply *Estelle v. McGuire,* —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). It's as if the panel figured that, since it was just remanding, it didn't need to get the law right. But such wholesale disregard of Supreme Court precedent has no place among the published opinions of the United States Court of Appeals. And, sure enough, the mischief spawned by this opinion has not been long in coming. Like Frankenstein's monster, its rationale has overtaken even its creator. *Compare Hamilton v. Vasquez,* slip op. 1515, —— F.3d —— (9th Cir. Feb. 3, 1994) (majority opinion), *with id.* at 1551, at —— (Trott, J., dissenting) (both opinions relying on *Fetterly*).

Moreover, this is a remand order with important substantive consequences: The state's right to prompt adjudication of the habeas petition is permanently impaired and petitioner is allowed to shoehorn into his first habeas petition a claim that wasn't ripe when he litigated his case in the district court. This is not a case, then, where errors committed now can be corrected later; the panel's opinion permanently compromises the law of the case and the law of the circuit. It is highly regrettable, therefore, that the full

court has not seen fit to take the case en banc.

I

A decade ago, Donald Fetterly was convicted of the first degree murder of Sterling Grammer, an acquaintance of his ex-mother-in-law. After an aggravation and mitigation hearing two months later, an Idaho judge sentenced Fetterly to death. Applying the prevailing interpretation of Idaho's sentencing statute, the judge weighed the mitigating evidence against all the aggravating factors taken together (instead of against each aggravating factor separately). The sentencing judge found that the aggravating factors predominated. Fetterly appealed his death sentence to the Idaho Supreme Court, *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1985), and then filed a state request for post-conviction relief, *State v. Fetterly*, 115 Idaho 231, 766 P.2d 701 (1988)—all without success.

In an unrelated case decided six years after Fetterly's conviction and sentencing, the Idaho Supreme Court held, as a matter of state law, that a sentencing judge must weigh all of the mitigating evidence against each aggravating factor separately. *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989).

Soon thereafter, Fetterly filed a federal habeas petition but failed to allege any error involving *Charboneau;* nor could he, having never raised the issue in state court. Some months later, Fetterly's new attorney became aware of *Charboneau* and filed a second state habeas petition, raising the issue and claiming Fetterly's trial counsel had been ineffective for failing to pursue it earlier. Fetterly also asked the district court to stay his federal habeas proceeding while he went about exhausting state remedies on the *Charboneau* issue. Fetterly no doubt wanted to keep the case in the district court so he could fold his *Charboneau* claim into his first federal petition, avoiding the cause and prejudice hurdle of *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The district court refused to stay the case, *Fetterly v. Paskett*, 744 F.Supp. 966, 976 (D.Idaho 1990), proceeded to adjudicate the claims raised in Fetterly's petition, *Fetterly v. Paskett*, 747 F.Supp. 594 (D.Idaho 1990), and resolved them all against him. While the case was pending on appeal before us, the Idaho Supreme Court rejected Fetterly's *Charboneau*-based state habeas petition, holding that Fetterly's sentence was consistent with Idaho sentencing law at the time his conviction became final and refusing to apply *Charboneau* retroactively, *Fetterly v. State*, 121 Idaho 417, 825 P.2d 1073, 1075 (1991) ("[T]he *Charboneau* interpretation of I.C. § 19–2515 does not apply to the present case because the present case was final prior to the issuance of *Charboneau*.").

Our panel does not deal with the substantive issues decided by the district court. Instead, it reverses the order denying Fetterly a stay of federal habeas proceedings while he was exhausting his *Charboneau* claim in state court. The panel remands for the district court to adjudicate Fetterly's newly exhausted claim, all the while keeping Fetterly's stay of execution firmly in place.

A. *McCleskey, Rose, Blodgett* Errors

In *McCleskey v. Zant*, the Supreme Court held that a state prisoner must raise all available claims in his first federal habeas petition. Claims raised in later petitions must be dismissed as an "abuse of the writ" unless the petitioner can show "cause and prejudice." *McCleskey*, 499 U.S. at 493–94, 111 S.Ct. at 1470. Fetterly did raise all of his available claims at the time he brought his federal petition, but later discovered another (his *Charboneau* claim) that he had not raised and could not raise because he hadn't yet exhausted it in state court: Had Fetterly amended his petition to add his *Charboneau* claim, the district court would have had to dismiss the entire petition under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

Thus, at the time petitioner discovered his *Charboneau* claim (and the related ineffective assistance of counsel claim), he faced three unpalatable choices: He could raise the *Charboneau* claim in federal court, precipitating an immediate dismissal of the entire petition under *Rose;* he could wait and raise it as part of a successive petition, in which

case it might be barred by *McCleskey;* and, finally, he could ask for dismissal of the first petition without prejudice so he could go exhaust his *Charboneau* claim, in which case he would lose his federal stay of execution, to which he was entitled only so long as his first petition was being adjudicated. *See, e.g., Campbell v. Blodgett,* 997 F.2d 512, 520 (9th Cir.1993) (stay of execution dissolved once federal petition dismissed).

Fetterly's only way out of this trilemma was to obtain a stay of the federal proceedings while he exhausted his *Charboneau* claim and the panel obliges. But, since when is a federal habeas petitioner entitled to put federal proceedings on hold while he finishes up his business in state court? A stay of federal habeas proceedings, after all, is also a stay of defendant's death sentence, impairing the state's legitimate interest in carrying out the sentence promptly. *In re Blodgett,* —— U.S. at ——, 112 S.Ct. at 676. This interference is justified only so long as the petitioner is busy litigating his federal claims; we have no authority to stay a death sentence while the petitioner is doing nothing at all in federal court.

The panel's ruling raises a troubling question: May a federal court drag out a stay of execution for no purpose other than to let petitioner pursue a claim that would require immediate dismissal of the petition if it were actually presented? The answer seems obvious to me: If the federal district court was without jurisdiction to consider Fetterly's *Charboneau* claim because it was yet unexhausted, it's an abuse of the writ—and a blatant end run around *McCleskey* and *Rose*—for the same court to maintain a stay of execution solely to support that claim.[1]

But we need not speculate; the Supreme Court has already given us the answer. *In re Blodgett* is materially indistinguishable from our case. The panel there effectively stayed federal proceedings on appeal while the petitioner exhausted various claims in state court. An exasperated Supreme Court said no:

> The orders by the Ninth Circuit to vacate submission of the case until completion of the state collateral proceeding and then to hold the case in abeyance pending filing and resolution of the third federal habeas proceeding in the District Court raise the very concerns regarding delay that were part of the rationale for this Court's decisions in *Rose v. Lundy* ... and *McCleskey v. Zant.* .... Adherence to those decisions, and their prompt enforcement by the district courts and courts of appeals, will obviate in many cases what the Court of Appeals here seems to perceive to be the necessity for accommodating multiple filings.

—— U.S. ——, ——, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992) (citations omitted). The Court focused particularly on the duty of the federal courts to act swiftly when there is a stay of execution in place:

> In a capital case the grant of a stay of execution directed to a State by a federal court imposes on that court *the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter,* consistent with its duty to give full and fair consideration to all of the issues presented in the case.

*Id.* (emphasis added).

If this case is at all distinguishable from *Blodgett,* it presents an even stronger case for refusing the stay. The *Blodgett* panel held the proceedings in abeyance so the petitioner could file *successive* petitions after exhausting his claims in state court; such petitions would still have been subject to the cause and prejudice requirement of *McCleskey.* Here, the panel stays proceedings to help petitioner circumvent *McCleskey:* "[W]ere we to close the door on Fetterly at this juncture, he would no doubt file a second

---

1. The case would be different had the defendant overlooked an available claim and later asked the district court for leave to amend the petition to include that claim. Under our liberal amendment rules, the district court would probably have abused its discretion in refusing leave to amend. Even if petitioner had finished exhausting a previously unexhausted claim while the case was still in district court, he might well have been entitled to amend the petition to include the newly-exhausted claim. But what the defendant here wanted—and what the panel gives him—is a federal stay of his death sentence while he exhausts an unexhausted state claim. *Fetterly v. Paskett,* 997 F.2d 1295, 1301–02 (9th Cir.1993).

petition in the district court based on these same claims. If so, we would see the same claims again, but they would be encumbered with all the new issues that come with subsequent petitions." *Fetterly v. Paskett,* 997 F.2d 1295, 1302 (9th Cir.1993). Is it really appropriate to use our stay power as an artifice for avoiding the Supreme Court's rulings?

As the court that drew the Supreme Court's ire in *Blodgett,* we have a special responsibility to tread lightly and avoid the same misstep again. At the very least, we must acknowledge *Blodgett* and try to explain why we think the Supreme Court's admonitions are inapplicable. The panel's silence on this point is more than a little remarkable.

### B. *McGuire, Godfrey* Errors

At about the same time as *Blodgett,* the Supreme Court also reversed us for using habeas review to correct state law errors. "Today," the Supreme Court told us, "we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire,* —— U.S. at ——, 112 S.Ct. at 480. A state's failure to apply its laws properly, the Supreme Court said, did not, in and of itself, violate due process. *Id.* at ——, 112 S.Ct. at 482.

Without mentioning *McGuire,* the panel revives the notion that a federal court may second-guess a state supreme court's application of state law. The issue here, it will be recalled, is whether Fetterly must be resentenced under the Idaho sentencing statute as interpreted by *Charboneau*—a state law case decided long after Fetterly's conviction became final. But when and how state law applies to a particular case is a matter on which the state supreme court has the last word. Here, the Idaho Supreme Court refused to apply *Charboneau* to Fetterly's case, holding that it only applied prospectively, *i.e.,* to defendants whose cases had not become final on direct appeal when *Charboneau*

came down. *Fetterly,* 825 P.2d at 1074–75. This surely is a judgment a state supreme court is entitled to make in interpreting and applying state law.

The panel faults the Idaho Supreme Court on two grounds. First, the panel says due process is offended whenever state courts do not give a defendant—even one whose conviction and sentence have become final on direct appeal—the benefit of a new interpretation of state law. 997 F.2d at 1301. Second, the panel says that failing to apply *Charboneau* in Fetterly's case denies him the proportionality review to which he is entitled under *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). 997 F.2d at 1299. Neither argument holds water.

As to due process, the panel says that "the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state." *Id.* at 1300. This is in direct conflict with *Estelle v. McGuire,* —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), which held that a state court's determination that a defendant is not covered by a particular state law rule is not cognizable on federal habeas, *id.* at ——, 112 S.Ct. at 480, and does not give rise to a due process claim, *id.* at ——, 112 S.Ct. at 482. Is there a way to reconcile this apparent conflict? The panel sayeth naught.[2]

The panel also relies on *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), where the Court found a due process violation based on a state court's refusal to apply a change in state law to Hicks's case alone. 997 F.2d at 1300. *Hicks* precedes *McGuire* and may have been overruled or narrowed by it. But assuming *Hicks* is still entirely good law, it only prevents a state court from denying an isolated defendant the benefit of a state law that applies to everyone else.

What does this have to do with Fetterly? The Idaho Supreme Court didn't single out Fetterly by arbitrarily refusing him, and him alone, the benefit of the new interpretation.

---

2. The panel does say that "Ninth Circuit precedent generally supports this proposition," 997 F.2d at 1300, but the two Ninth Circuit cases it cites—*Ballard v. Estelle,* 937 F.2d 453 (9th Cir.

1991), and *Hernandez v. Ylst,* 930 F.2d 714 (9th Cir. Apr. 1991)—both precede *McGuire.* To the extent they may have once supported the panel's conclusion, they've been overtaken by *McGuire.*

No, what the court said is that *Charboneau* would be applied only to those defendants whose convictions had not yet become final. The distinction between prospective and retrospective application, it noted, is one the U.S. Supreme Court has approved in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and has applied to its own cases, *see, e.g., Trevino v. Texas,* —— U.S. ——, ——, 112 S.Ct. 1547, 1550, 118 L.Ed.2d 193 (1992) (relying on distinction in *Griffith* between final and pending cases when applying *Batson's* peremptory challenge rule). How, then, can it violate due process for a state supreme court to limit the retroactive sweep of its decisions precisely the same way?

Equally untenable is the panel's alternate theory that failure to apply the law retroactively violates *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), because "others similarly sentenced in Idaho have been and will necessarily be treated differently" if they benefit from a new sentencing procedure while petitioner here does not. 997 F.2d at 1299. *Godfrey* and other cases do require that state supreme courts conduct proportionality review, which compares the sentence in each death case with those imposed in other, similar cases. But the need to conduct proportionality review surely does not mean—as the panel seems to say—that all changes in the state's capital sentencing law must be applied retroactively to all defendants on death row.

This is clear from *Arave v. Creech,* —— U.S. ——, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993), another recent Supreme Court case the panel ignores. Creech was the first defendant sentenced after the Idaho Supreme Court reinterpreted its sentencing law in *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981). Creech argued that *Osborn* did not narrow the statute enough to ensure meaningful proportionality review, and in support he cited cases decided after his own.[3] The Supreme Court rejected those cases, noting they were irrelevant for purposes of *Godfrey* review: "None of the [subsequently decided]

decisions on which the dissent relies, or upon which Creech asks us to invalidate his death sentence, influenced either the trial judge who sentenced Creech or the appellate judges who upheld the sentence." *Creech,* —— U.S. at ——, 113 S.Ct. at 1544. This fatally undermines the panel's rationale: Since *Godfrey* review may be conducted only by comparison with prior cases, it can be satisfied if Fetterly was sentenced under the same sentencing regime as other pre-*Charboneau* defendants.

He clearly was. The Idaho Supreme Court neatly grouped defendants into two categories: earlier ones who do not get the benefit of *Charboneau* and later ones who do. Fetterly's sentence was compared with others sentenced the same way he was. *See Fetterly,* 825 P.2d at 1074 ("We have not applied the *Charboneau* decision to any case that was final prior to the issuance of *Charboneau* on April 4, 1989."). This case is thus no different from one where the sentencing statute changed; post-*Charboneau* defendants will have their proportionality review conducted vis-a-vis other defendants sentenced in accordance with *Charboneau,* while pre-*Charboneau* defendants like Fetterly have their review conducted vis-a-vis others in their class.

The panel may be making a subtler argument. It may think Fetterly must be sentenced like later defendants to provide a meaningful pool of cases for comparison under *Godfrey.* This is a plausible argument but also foreclosed by *Creech.* Creech was the first defendant to whom the post-*Osborn* statute was applied; there were thus no prior cases with which to compare his sentence. Subsequent cases, the Court told us, were irrelevant. Creech thus was in a class by himself, yet the Court did not seem to think this rendered *Godfrey* review impossible or meaningless.

The only rational conclusion to be drawn from *Creech* is that *Godfrey* proportionality review does not require identical sentencing schemes. State judges can compare sentences imposed on earlier defendants even

---

**3.** He could cite no prior cases because all such cases had been decided under the pre-*Osborn*

interpretation of the statute.

when the wording or interpretation of the sentencing statute has changed somewhat. The point, after all, is not to freeze the sentencing law in place, but to ensure that death sentences are carried out only in the most egregious cases. Comparisons for this purpose can be based on the facts and circumstances of the various cases, even though the sentences may have been imposed under different statutory standards.[4]

Whether its misunderstanding stems from *McGuire* or *Godfrey*, the panel's holding that any new interpretation of the sentencing law must apply retroactively to all inmates on death row has alarming implications. Not only will every reinterpretation or amendment of the capital sentencing statute give each inmate on death row a right to demand resentencing and start the process of collateral and tertiary review from scratch, but it also will make state supreme courts think twice about their rulings. Much as they may want to give the statute a narrowing interpretation or construe it to operate more fairly, state supreme court justices will have to consider that every defendant awaiting exe-

cution will have to be resentenced under that new interpretation. *Godfrey* was never meant to produce such a bizarre result.[5]

### C. *Teague* Errors

The Supreme Court has told us repeatedly not to apply new constitutional rules on collateral review of state convictions.[6] *See, e.g., Stringer v. Black,* —— U.S. ——, ——, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992); *Butler v. McKellar,* 494 U.S. 407, 412–14, 110 S.Ct. 1212, 1216–17, 108 L.Ed.2d 347 (1990); *Saffle v. Parks,* 494 U.S. 484, 487–88, 110 S.Ct. 1257, 1259–60, 108 L.Ed.2d 415 (1990); *Penry v. Lynaugh,* 492 U.S. 302, 329, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989); *Teague v. Lane,* 489 U.S. 288, 299–310, 109 S.Ct. 1060, 1069–75, 103 L.Ed.2d 334 (1989). Notwithstanding the Court's crystal clear pronouncements, the panel rushes headlong to apply a new, incredibly broad rule retroactively to this petitioner without even explaining why it may do so.[7]

What's the panel's new rule? It is that state supreme courts violate due process and

---

**4.** If this were not the case, it would be impossible to conduct proportionality review as to the first defendant sentenced after a death sentencing statute is amended. Worse, it could preclude the imposition of *any* death sentence under such a statute: Once the first death sentence is knocked out on this basis, there would no longer be anyone with whom to compare the second death sentence, so it too would have to be vacated, ad infinitum.

**5.** Judge Trott's concurrence suggests that the procedure of Idaho Code section 19–2315(c), as interpreted by *Charboneau*, is constitutionally required because it was adopted in response to Supreme Court cases such as *Gregg* and *Godfrey*. *See generally* Trott concurrence at 1481–83. But the panel's opinion says the contrary: "There is, of course, nothing in the Constitution of the United States that requires Idaho's legislature to approach balancing as it has done in Idaho Code § 19–2515(c)." 997 F.2d at 1300. This means that Idaho was free to adopt either a death penalty sentencing procedure that balances all mitigating factors against each aggravating factor *or* balances all aggravating and mitigating factors against each other. Since, according to the panel's own ruling, either of these procedures would satisfy *Gregg, Godfrey,* etc., I fail to understand how Fetterly's Eighth Amendment rights were violated because he was sentenced in

accordance with one constitutionally acceptable procedure rather than another.

**6.** This rule has two exceptions, neither of which applies here. The panel's rule does not "place[] 'certain kinds of primary, private conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague v. Lane,* 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring)). After all, the panel's opinion doesn't make the murder Fetterly committed legal. Nor is the panel's new rule the sort "without which the likelihood of an accurate conviction is seriously diminished." *Id.,* 489 U.S. at 313, 109 S.Ct. at 1077. Whether changes in sentencing jurisprudence apply retroactively is not "central to an accurate determination of innocence or guilt." *Id.* The defendant is still guilty (or innocent, for that matter) regardless of how the sentencing judge weighs the mitigating evidence.

**7.** The panel mentions *Teague* only long enough to observe that *Teague* did not mandate the state supreme court's refusal to apply *Charboneau* retroactively. *See* 997 F.2d at 1298 n. 1. True but irrelevant. The question is not whether *Teague* required the state court's ruling, but whether *Teague* permits our ruling. On the latter issue, the panel is pretty much mum.

the Eighth Amendment when they refuse to apply a new construction of a criminal sentencing statute retroactively to defendants whose decisions have become final.[8] Does the panel articulate the rationale for its opinion? Not in so many words. However, the panel's ruling turns on its disagreement with the Idaho Supreme Court as to whether Fetterly is entitled to benefit from *Charboneau*. Since the state supreme court's refusal to apply *Charboneau* to Fetterly's case was based on a particular rationale—that state habeas petitioners are not entitled to the benefit of a new construction of a sentencing statute—the panel must be saying that this rationale violates due process. 997 F.2d at 1300 (describing Idaho Supreme Court's refusal to apply *Charboneau* retroactively as a "failure of a state to abide by its own statutory commands" which violates due process).

Is this rule new? You bet it is. I am aware of no authority for the proposition that a state supreme court violates due process by choosing to apply a new interpretation of a state (sentencing) statute only to cases not yet final on appeal. Everything the Supreme Court has said on the subject has been to the contrary. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 326–28, 107 S.Ct. 708, 715–16, 93 L.Ed.2d 649 (1987); *Trevino v. Texas,* —— U.S. ——, ——, 112 S.Ct. 1547, 1550, 118 L.Ed.2d 193 (1992).

This portion of the panel's ruling, incidentally, is not limited to death cases. As best I can tell, its holding—that a state violates due process by refusing to apply one of its decisions retroactively to prisoners whose conviction and sentence have become final—is generally applicable in all criminal cases. The effect of this ruling on the prison population in the nine states of this circuit is difficult to predict, but it surely will not be trivial.

The panel also announces a narrower rule applicable to death cases only: that *Godfrey* requires a state to apply any changes in its death sentencing statute to all inmates on death row. This too is new and different; this too requires application of *Teague*.

Moreover, the panel seems to think it may put off the *Teague* issue until remand:

> [T]he *Charboneau* issue is shrouded by other legal issues that are best litigated in district court. . . . Does *Teague v. Lane* stand in Fetterly's way as claimed by Idaho's Attorney General?

997 F.2d at 1302 (citations omitted).

This is one of the panel's most obvious mistakes. The *Teague* inquiry is a threshold question, not the stuff of remands or subsequent determinations. In announcing a new rule, courts must first determine whether—pursuant to *Teague*—the rule will be applied retroactively. So the Supreme Court has thrice told us:

> In our view, the question "whether a decision [announcing a new rule should] be given prospective or retroactive effect should be faced *at the time of [that] decision." Retroactivity is properly treated as a threshold question,* for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated. Thus, before deciding whether the fair cross section requirement should be extended to the petit jury, we should ask whether such a rule would be applied retroactively to the case at issue.

*Teague,* 489 U.S. at 300–01, 109 S.Ct. at 1070 (plurality opinion) (citations omitted) (emphasis added) (brackets inserted by the Court). Again: "Under *Teague,* we address the retroactivity issue as a threshold matter because Penry is before us on collateral review." *Penry v. Lynaugh,* 492 U.S. 302, 329, 109 S.Ct. 2934, 2952, 106 L.Ed.2d 256 (1989). And yet again: "As he is before us on collateral review, we must first determine whether the relief sought would create a new rule under our holding in *Teague* . . . and *Penry* . . . . If so, we will neither announce nor

---

8. The new federal rule the panel announces is not *Charboneau* itself, of course. *Charboneau* is an interpretation of state law which was not in any way influenced by federal constitutional concerns. The rule of decision in our court is the applicability of *Charboneau* to Fetterly's case.

The panel here is saying that Fetterly is entitled to have *Charboneau* applied to his case because failure to do so violates due process and the Eighth Amendment. This is the new federal rule, and a mighty sweeping one at that.

apply the new rule sought by Parks unless it would fall into one of the two narrow [*Teague*] exceptions." *Saffle v. Parks*, 494 U.S. 484, 487–88, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990) (citations omitted).[9]

*Parks* is of particular significance and underscores why the announcement of the substantive rule may not be divorced from the *Teague* analysis: If the rule the habeas petitioner seeks is barred by *Teague*, the federal court may "neither announce nor apply the new rule." 494 U.S. at 487, 110 S.Ct. at 1260. The panel here both announces a new rule in a published opinion and applies it to petitioner by reversing the district court for legal error. In so doing, the panel overlooks yet another body of Supreme Court case law.

*   *   *   *   *   *

Any one of the errors discussed here—the panel's flouting of *Blodgett*, its circumvention of *McCleskey*, its disregard of *McGuire*, its misreading of *Godfrey* or its refusal to abide by *Teague*—would, by itself, render this opinion untenable. An opinion that commits all these errors has no place in the case law of this circuit. We have a responsibility to put our own house in order. I dissent.

TROTT, Circuit Judge, Concurring in the Order rejecting the suggestion for rehearing en banc:

*Estelle v. McGuire*, —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), which Judge Kozinski believes has been ignored,[1] merely reprises the unremarkable and longstanding proposition that " 'federal habeas corpus relief does not lie for errors of state law.' " *Id.* at ——, 112 S.Ct. at 480 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). *Estelle v. McGuire* is not a landmark decision. It simply reiterates the settled law and then applies it to a pending case.

*Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), appears to be better authority for the instant case than *Estelle v. McGuire* because the issue in *Hicks* is more similar to the issues raised by Fetterly. Whereas *Estelle v. McGuire* deals with the admissibility of evidence and limiting jury instructions, *Hicks* demonstrates how a state law *sentencing* error can be a deprivation of a due process interest protected by the Constitution:

> It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State. In this case Oklahoma denied the petitioner the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury *might* have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision. Such an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law.

*Id.* at 346, 100 S.Ct. at 2229 (citations and footnote omitted). Substitute "life interest" for "liberty interest" in this quotation and it is easy to see that *Hicks* is apposite.

*Estelle v. McGuire* does not hold, nor has it ever been held, that a deficiency amounting to a state law error can never violate the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241 (1988). What is clear from *Estelle v. McGuire* is that the

---

9. The only exception to this rule was announced in *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990), where the Supreme Court held that it need not raise the *Teague* issue sua sponte when the parties did not raise it. Here, as the panel notes, the State has raised *Teague* vigorously. *See* 997 F.2d 1302.

1. Because this opinion attempts to answer Judge Kozinski's dissenting opinion from the rejection of the suggestion for rehearing en banc, the reader would be well advised to read Judge Kozinski's opinion first.

demonstration of an error under state law does not ipso facto equate to the demonstration of a denial of due process under the Constitution. But a State may not terminally slam the habeas door in a federal court's face merely by alleging that all it did was break its own axial rules in sentencing someone to death. The incantation by a State of "state law error" certainly should signal caution to a federal court hearing a petitioner's claim under habeas, but it does not put an end to the inquiry—it begins it.

So the question presented when we confront an error of state law is, "yes, but does what happened to the defendant-petitioner also ascend to the level of a violation of fundamental fairness as protected by the Fourteenth Amendment and, as in this case, as guarded against by the Eighth Amendment?" One can read *Estelle v. McGuire* itself to see how this works. *See also Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Moore v. Dempsey*, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923).

In the case of Donald Fetterly, no one disputes his claim that the judge who sentenced him to death failed to apply the state statute governing how the crucial decision between life and death shall be made. No one can dispute Fetterly's claim that under Idaho law, the state trial court "did not engage in the balancing procedure mandated by the legislature." *Fetterly v. State*, 121 Idaho 417, 825 P.2d 1073, 1081 (1991) (Bistline, J., dissenting on denial of petition for rehearing). This structural failure is materially different from a misapplication of an aggravating circumstance to the facts of a case. *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102. So the question for us is whether the sentencing judge's failure to follow an essential element of the controlling state sentencing statute was just a violation of state law, or was it also the kind of breach or defect that violates the Eighth and Fourteenth Amendments?

On the merits of whether Idaho's sentencing failure was more than just a state law error, i.e., whether it also violated the Eighth and the Fourteenth Amendments, the issue is reasonably straightforward. In *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49

L.Ed.2d 859 (1976), the Supreme Court told the States that the Constitution would permit them to impose the death penalty for certain offenses, but *only* if they regularly followed procedures that would ensure that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Id.* at 189, 96 S.Ct. at 2932. Four years later in *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the Court repeated the requirement that these procedures provide "a meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not." *Id.* at 427, 100 S.Ct. at 1764 (quoting *Gregg*, 428 U.S. at 188, 96 S.Ct. at 2932) (internal quotations omitted). As Justice Powell said in *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), "Beginning with *Furman* the Court has attempted to provide *standards for a constitutional death penalty* ...." *Id.* at 111, 102 S.Ct. at 875 (emphasis added). Justice Scalia summed up the Court's jurisprudence on this issue in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring in part and concurring in the judgment):

Over the course of the past 15 years, this Court has assumed the role of rule-making body for the States' administration of capital sentencing—effectively requiring capital sentencing proceedings separate from the adjudication of guilt, *see, e.g., Woodson v. North Carolina*, 428 U.S. 280, 301–305 [96 S.Ct. 2978, 2989–2992, 49 L.Ed.2d 944] (1976) (plurality opinion); *Gregg v. Georgia*, 428 U.S. 153, 195 [96 S.Ct. 2909, 2935, 49 L.Ed.2d 859] (1976) (opinion announcing judgment), dictating the type and extent of discretion the sentencer must and must not have, *see, e.g., Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978) (plurality opinion); *Godfrey v. Georgia*, 446 U.S. 420 [100 S.Ct. 1759, 64 L.Ed.2d 398] (1980), requiring that certain categories of evidence must and must not be admitted, *see, e.g., Skipper v. South Carolina*, 476 U.S. 1

[106 S.Ct. 1669, 90 L.Ed.2d 1] (1986); *Booth v. Maryland,* 482 U.S. 496 [107 S.Ct. 2529, 96 L.Ed.2d 440] (1987), undertaking minute inquiries into the wording of jury instructions to ensure that jurors understand their duties under our labyrinthine code of rules, *see, e.g., Caldwell v. Mississippi,* 472 U.S. 320 [105 S.Ct. 2633, 86 L.Ed.2d 231] (1985); *Mills v. Maryland,* 486 U.S. 367 [108 S.Ct. 1860, 100 L.Ed.2d 384] (1988), and prescribing the procedural forms that sentencing decisions must follow, *see, e.g., McKoy v. North Carolina,* 494 U.S. 433, [110 S.Ct. 1227, 108 L.Ed.2d 369] (1990). The case that began the development of this Eighth Amendment jurisprudence was *Furman v. Georgia,* 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972) *(per curiam),* which has come to stand for the principle that a sentencer's discretion to return a death sentence must be constrained by specific standards so that the death penalty is not inflicted in a random and capricious fashion.

*Id.,* 497 U.S. at 657, 110 S.Ct. at 3059 (citations omitted). "No adequate procedures, no death penalty" has been the constant message from the Court.

To comply with these instructions, Idaho enacted very specific statutes. One of these statutes, Idaho Code § 19–2515(c), prescribes unequivocally the exact manner in which the pivotal life or death decision shall be made by the sentencing judge. What could be of more importance in the process than the life or death decision itself? This statute was not followed when Fetterly was sentenced to die. Stripped to its essentials, Idaho's argument amounts to a claim that it is currently empowered to impose the death penalty because it has adopted adequate procedures to eliminate arbitrariness, procedures mandated by the Constitution as interpreted by the Supreme Court in *Gregg* and its progeny, but it is also free at the moment of making the life or death decision not to follow those procedures in a given case.

Informed by *Hicks,* I believe Fetterly's claim colorably implicates both a life and a liberty interest specifically protected by both the Eighth and Fourteenth Amendments. What good are crucial *Constitutional* rules established in response to *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Gregg* if the States are free not to follow them *in their essentials* once they are on their books? Just a state law problem? The Supreme Court has advised us that

> under the Eighth Amendment "the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." Accordingly, many of the limits that this Court has placed on the imposition of capital punishment are rooted in a concern that the sentencing process should facilitate the responsible and reliable exercise of sentencing discretion.

*Caldwell v. Mississippi,* 472 U.S. 320, 329, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (quoting *California v. Ramos,* 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3452, 77 L.Ed.2d 1171 (1983)). In *Caldwell,* the Court overturned a sentence of death because a prosecutor's remarks misled the sentencing jury to believe that the responsibility for determining the appropriateness of the defendant's death lay with an appellate court. In discussing the importance of the life and death decision itself, the Court said:

> Belief in the truth of the assumption that sentencers treat their power to determine the appropriateness of death as an "awesome responsibility" has allowed this Court to view sentencer discretion as consistent with—*and indeed as indispensable to*—the Eighth Amendment's "need for reliability in the determination that death is the appropriate punishment in a specific case."

*Id.,* 472 U.S. at 330, 105 S.Ct. at 2640 (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2998, 49 L.Ed.2d 944 (1976)). *Woodson* could not be clearer on this issue:

> [W]e believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a *constitutionally indispensable* part of the process of inflicting the penalty of death.

This conclusion rests squarely on the predicate that the penalty of death is qualitatively different from a sentence of imprisonment, however long.... Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case. *Woodson,* 428 U.S. at 304–05, 96 S.Ct. at 2991 (citations omitted) (emphasis added).

In *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), Justice Stewart focused on the Constitutional importance of properly weighing the pertinent circumstances reflecting on the appropriate penalty. Justice Stewart said about that case—which cannot be said about what *occurred* in the instant case—that "[t]he directions given to judge and jury by the Florida statute are sufficiently clear and precise to enable the various aggravating circumstances to be weighed against the mitigating ones. As a result, the trial court's sentencing discretion is guided and channeled by a system that focuses on the circumstances of each individual homicide and individual defendant in deciding whether the death penalty is to be imposed." *Id.* at 258, 96 S.Ct. at 2969. In Fetterly's case the instructions given by the Idaho statute to the sentencing judge were not followed, period.

No matter where one looks, the answer is the same. In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Court said it this way:

> From the point of view of society, the action of the sovereign in taking the life of one of its citizens ... *differs dramatically from any other legitimate state action.* It is of vital importance to the defendant and to the community that *any decision to impose the death sentence* be, and appear to be, based on reason rather than caprice or emotion.
>
> Second, it is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. *The defendant has a legitimate interest in the character of the procedure* which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.

*Id.* at 357–58, 97 S.Ct. at 1204–05 (citations omitted) (emphasis added).

*Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), picks up this theme: "Thus, although not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state-court judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error." *Id.* at 885, 103 S.Ct. at 2747.

In *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), then Justice Rehnquist made this observation: "One question that has arisen is whether defendants must be resentenced when trial courts erroneously consider improper aggravating factors. If the trial court found that some mitigating circumstances exist, the case will generally be remanded for resentencing." *Id.* at 954–55, 103 S.Ct. at 3427.

This analysis also finds support in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), a case in which a sentence of death was reversed because the Court found a "barrier" to the sentencer's proper "consideration of all mitigating evidence":

> Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The *possibility* that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

*Id.* at 383–84, 108 S.Ct. at 1870 (emphasis added). In Fetterly's case, there is more than a possibility that his sentencer conducted his task improperly vis-a-vis the mitigating evidence: we know this is precisely what happened. In the words of *Zant,* this presents a "colorable claim" of Constitutional error. *See also Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973

(1978) ("[T]he risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. . . . is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.").

Justice O'Connor's reflection in her concurrence in *Eddings v. Oklahoma,* 455 U.S. 104 at 118, 102 S.Ct. at 878, (1982), is pertinent: "[T]his Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake." Here, the sentence imposed was unquestionably determined by a sentencing judge who made a crucial organic *mistake* as to the manner in which he was required to use the various circumstances to make his decision.

*Gregg* is reduced to a hollow promise if a State may ignore the essentials of its own *Gregg*-required rules regarding the manner in which the core decision of who shall live and who shall die is made. What other *core* death penalty decision-making deviations will be tolerated in the name of state law error? If this one, why not all? Do we only care about what is in a state's statutes and not what actually happened to a defendant? Where is the product of the " 'meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many in which it is not' " in circumstances where the sentencing judge fails to follow the critical statute? Where does the judge get the authority to sentence a person to die if not from a statute? By definition, the life or death decision necessarily becomes arbitrary if the manner in which it is made is not authorized by the controlling law. The relevant definition of "arbitrary" is, "established by a court or judge rather than by a specific law or statute." Webster's II New Riverside University Dictionary (1984). Once a state has chosen a Constitutionally valid approach, it must stick to the script. It would appear that this kind of a violation is *precisely* what habeas is designed to address.

Judge Kozinski is concerned that our holding will spill over into other areas. I do not have that fear. This is a death penalty case, and it involves the life or death decision itself. It is a mistake to assume that our holding could be successfully cited for the proposition that *all* state law sentencing errors amount to a denial of due process. *See Zant v. Stephens,* 462 U.S. at 885, 103 S.Ct. at 2747 ("[N]ot every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state-court judgment. . . .").

Judge Kozinski also says we must turn away Fetterly's sentencing claim because of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), which prohibits the application of a new *Constitutional* rule on collateral review of state convictions. The point Judge Kozinski appears to have missed is that Fetterly asks only that he be sentenced in conformity with the *statute on the books* at the time he was sentenced. He seeks neither the retroactive application of a "new" holding nor the benefit of a "new rule." Judge Kozinski miscasts *Charboneau* as involving a "*new* construction of a state sentencing statute" (emphasis added). Not so. In *Charboneau* the Idaho Supreme Court clearly said that all it was doing was reading the controlling statute word for word as it was written. There was nothing "new" in *Charboneau,* just a recognition of what was already there in the form of direction from the legislature. I repeat here what was quoted in our panel opinion as the basis for the Idaho Supreme Court's decision granting a new sentencing hearing to Charboneau: "If the legislature had intended the mitigating circumstances to be weighed against all the aggravating circumstances found as a group, it would have referred 'to the aggravating circumstances found.' *The plain meaning of the statute dictates* our conclusion on this issue." 774 P.2d at 323 (emphasis added).

*No* rule "*dictated* " by anything is a "new rule." How do we know this? Because the Supreme Court said so in *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990): "[A] decision announces a new rule ' "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." ' " *Id.* at 412, 110 S.Ct. at 1216 (quoting *Penry v. Lynaugh,* 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989) (quoting *Teague,* 489 U.S.

at 301, 109 S.Ct. at 1070)) (emphasis in original).

Moreover, our panel opinion has neither fashioned nor applied a "new rule." *Furman, Gregg, Godfrey, Woodson, Proffitt, Eddings, Gardner,* and *Hicks* all predate Fetterly's conviction, and certainly dictate the result in this case.

Judge Kozinski complains we have given *In re Blodgett,* — U.S. —, 112 S.Ct. 674, 116 L.Ed.2d 669 (1992), the "cold shoulder." But I respectfully believe he misstates *Blodgett* when he claims we have been told by the Court "we may not delay federal habeas proceedings so the petitioner can litigate unrelated claims in state court." What the Court said was as follows:

> In a capital case the grant of a stay of execution directed to a State by a federal court imposes on that court the concomitant duty to take all steps necessary to ensure a prompt resolution of the matter, *consistent with its duty to give full and fair consideration to all of the issues presented in the case.*

*Id.* at —, 112 S.Ct. at 676 (emphasis added).

The procedural complexities in the case of Charles Rodman Campbell and the delays as detailed in *Blodgett* are not comparable to the instant case. Moreover, unlike the instant case, *Blodgett* involved a *second* petition in federal court, not a first filing. The handling of Fetterly's case has been fully consistent with our duty to give full and fair consideration to *all* of the issues presented in the case, and consistent with the sworn responsibility of federal judges to guard against a State's wish to execute a prisoner who may well have been denied his rights as a citizen of the United States to the due process of law guaranteed by the Fourteenth Amendment, and whose sentence of death may have been arbitrary in violation of the Eighth Amendment. Because of the unusual posture in which this issue comes to us—it was not heard on its merits by the district court—we are unable to render a final decision on it, but it does appear that it constitutes a "colorable claim" deserving of a hearing, and that it was error for the district court to have denied Fetterly the stay he requested.